636 So.2d 276 (1994)
Norma W. THREATS, Plaintiff-Appellee,
v.
Bryan P. DEROUSSELLE, et al., Defendants-Appellants.
No. 93-1047.
Court of Appeal of Louisiana, Third Circuit.
April 6, 1994.
*277 Terry Eli Theriot, Lafayette, for Becky Threats.
James Edward Diaz Jr., Lafayette, for Bryan P. Derousselle et al.
B. Todd Soileau, Rayne, for Louisiana Indem. Co.
Stephen Miller Irving, Baton Rouge, for Fidelity Fire & Cas. Ins. Co.
Before KNOLL, COOKS and WOODARD, JJ.
KNOLL, Judge.
In this insurance coverage litigation, Louisiana Indemnity Company (Louisiana Indemnity), the uninsured motorist carrier of Norma Threats, appeals the trial court's grant of summary judgment in favor of the insured and her daughter, Becky C. Threats. The trial court found that the exclusion of Becky, a member of Mrs. Threats' household, in the Louisiana Indemnity policy was unenforceable because it violated the Compulsory Insurance Law, LSA-R.S. 32:861, and was against public policy. Accordingly, the trial court ruled that the Louisiana Indemnity policy provided uninsured motorist and collision coverage.
Subsequently, a trial on the merits was held and the trial court determined Becky's percentage of fault, her general damages, and Norma's recovery under the collision and towing provisions of her insurance contract with Louisiana Indemnity. The trial court further allocated liability between Louisiana Indemnity and LIGA, the legal successor to the insurer for the other motorist involved in the accident, Bryan Derousselle.
Louisiana Indemnity contends that the trial court erred in finding: (1) uninsured motorist coverage and collision coverage under the Louisiana Indemnity policy; (2) failing to find Becky's exclusion in accordance with public policy by applying the July 9, 1992, amendment to LSA-R.S. 32:900(L) retroactively to this preamendment policy and accident; and (3) substantively amending the trial court judgment with regard to the liability relationship between Louisiana Indemnity and LIGA after written reasons for judgment were handed down. We affirm.

FACTS
The learned trial court set out the facts of this case in its written reasons for judgment which we incorporate as our own:
"This case involves an automobile accident which occurred on April 18, 1990. Becky Threatts, the driver of the Toyota Corolla owned by her mother, Norma Threatts, testified that her mother gave her permission to use her automobile. Becky testified that on April 18, 1990, she drove her mother's automobile to purchase gas at the Exxon station located at the intersection of South College Road and Johnston Street in Lafayette, Louisiana. She was behind a recreational vehicle waiting to exit the station onto South College Road when she heard a roaring engine and saw a pick-up truck heading straight toward her. The right front of the pick-up truck struck the left front of the Threatts' automobile. Bryan Derousselle, the driver of the pick-up truck which was involved in the accident, testified that he entered the Exxon station from South College Road to purchase gas. He stated that the Threatts' automobile was moving forward just before the collision. A written statement by Mr. Derousselle was entered into evidence. It stated that Becky Threatts darted out *278 from the direction of the self-service pumps and struck his truck.
The police report indicates that Mr. Derousselle stated that he turned right from South College Road onto the Exxon station parking lot when Becky Threatts pulled out into his path. Becky stated that she was leaving the pumps when Mr. Derousselle, who she heard changing gears as he sped across the lot, struck her vehicle.
All maneuvers in a service station should be undertaken with extreme caution as there are no rules of the road and traffic may approach from any direction at any time. This Court finds both parties were moving forward at the time of the accident and neither party was paying attention to their surroundings and were both negligent in causing this accident. This Court finds that each party is fifty percent at fault for the cause of this accident.
As a result of this accident, Becky Threatts suffered back and neck pain for which she was treated at University Medical Center for about six months. She began feeling better after this time. She incurred a bill of $347.11 for the services of Acadian Ambulance because of the accident.
Norma Threatts, the other plaintiff in this matter sustained damages to her vehicle which was involved in the accident.
Prior to this accident, Norma Threatts had purchased an automobile public liability insurance policy from Louisiana Indemnity Company which was in full force and effect on the date of the accident. It included coverage for bodily injury and property damage liability, collision and uninsured motorist protection. Norma Threatts testified that she was required to exclude her daughter from coverage in order to obtain insurance and signed an exclusion endorsement. Defendant Bryan Derousselle was insured by Fidelity Fire and Casualty Insurance Company.
Becky Threatts brought suit against Bryan Derousselle and Louisiana Insurance Guarantee Association (LIGA) as the legal successor to Fidelity Fire, its insurer, and against Louisiana Indemnity Company under the uninsured motorist provisions of the policy.
Norma Threatts filed suit against Mr. Derousselle and LIGA for her property damages as well as Louisiana Indemnity, her collision carrier.
Louisiana Indemnity cross-claimed Bryan Derousselle and/or LIGA for indemnity, and/or alternatively contribution for any amounts it may be adjudicated liable unto each plaintiff.
Norma Threatts testified that she was told by Fidelity Fire's employee, Ronald Pearson, that she could choose where she wanted her car repaired and Fidelity would pay for the costs. The car was repaired in May of 1990 at Musson Patout but Norma Threatt was not allowed to pick it up because the bill had not been paid. She contacted Fidelity and they refused payment.
Demand was made by Norma Threatts for payments from Louisiana Indemnity under the collision provision of the policy. It refused payment stating that Norma Threatts specifically excluded Becky Threatts as a driver.
* * * * * *
Norma Threatts paid the towing bill of $217.35 on the day of the accident. She was unable to pay Musson Patout the cost of repair because she has been unable to work. The cost of repair totals $3,874.44. Norma Threats incurred storage costs of the vehicle of $7,803 from July 1, 1990 to this date at a rate of $9.00 per day at Musson Patout because they refused to tender the car without payment.
At the trial of this matter, Ronald Pearson denied authorizing Musson Patout to perform the repairs on Norma Threatts' automobile. This Court finds that even if Pearson would have entered into a contract with Norma Threatts with regard to the repair of the vehicle in payment of the repair bill, it is not binding on LIGA. The pre-insolvency debts of the insolvent company, Fidelity Fire, are not the responsibility of LIGA. Louisiana Revised Statute 22:1379.

*279 Judgment in favor of Becky Threatts and against Bryan Derousselle and LIGA for $1,347.11 which includes the ambulance bill in the amount of $347.11 and general damages in the amount of $1,000.00. This amount is to be reduced by fifty percent.
Judgment in favor of Norma Threatts and against Louisiana Indemnity, her collision carrier for the full amount of the cost of repair which equals $3,874.44 less the $250.00 deductible, the $217.35 towing bill as well as reasonable storage fees of $270.00 and legal interest from the date the repairs were completed.
Judgment against Bryan Derousselle and LIGA for the $250.00 deductible reduced by fifty percent.
Judgment in favor of Louisiana Indemnity against Bryan Derousselle and LIGA for the amount of the judgment against it reduced by fifty percent."
Before judgment was signed in accordance with the trial court's written reasons, LIGA motioned the court for a rehearing to consider statutory law which limited LIGA's liability for subrogation claims and the non-duplication provisions which are operative when other insurers, like Louisiana Indemnity, are obligated to pay before LIGA has any responsibility. The trial court granted oral argument on LIGA's motion and ultimately signed a final judgment which limited LIGA's liability in a manner which differed from the written reasons for judgment.

SUMMARY JUDGMENT
Louisiana Indemnity contends that the trial court erred in finding that its exclusion of Becky was unenforceable as being against public policy.
In its written reasons for judgment on the motions for summary judgment, the trial court stated:
"On April 18, 1990, Norma Threatts had given her daughter, Becky, permission to drive her automobile when she was involved in an accident with Bryan Derousselle. Becky Threatts brings her action against Louisiana Indemnity Company claiming that the insurance policy issued to her mother on the car involved in the collision provided Becky coverage under the uninsured/underinsured provisions of the policy. Norma Threatts claims damages in tort and breach of contract alleging coverage under the collision provisions of the Louisiana Indemnity Company policy.
Louisiana Indemnity Company contends that an exclusion endorsement signed [signed on December 28, 1989,] by Norma Threatts in consideration of the premium charge for the policy excludes coverage to the automobile while it is being used, driven, operated or manipulated by, or under the care or custody of Becky Threatts, [Norma's daughter and a member of her household].
This Court finds that this exclusion of Becky Threatts, who is a member of the family of the insured who resides in the same household is unenforceable because it violates the Compulsory Law, La.R.S. 32:861 and is against public policy. Pitcher v. Pitcher, 607 So.2d 838 (La.App. 1 Cir.1992).
Although Act 979, 1992 Regular Session remedies this problem and allows an insurer and insured, by written agreement, to exclude from coverage any named person who is a resident of the same household as the named insured, it is not applicable to the case at hand.
* * * * * *
As to the cross motion for summary judgment filed on behalf of LIGA and Bryan Derousselle, this Court finds that the specified driver exclusion shall be deleted from the said insurance policy."
Initially, we note that Louisiana Indemnity does not dispute the holding of Fields v. Western Preferred Cas. Co., 437 So.2d 344 (La.App. 2 Cir.1983), writ denied, 440 So.2d 528 (La.1983), and other like cases, that it is against public policy for a motor vehicle liability policy not to provide coverage for the permissive use of the covered vehicle and every contractual provision or rider that deviates from the permissive use requirement is unenforceable. However, it contends that these cases are inapplicable to the present case because the claims of Norma and *280 Becky are for uninsured motorist and collision coverage, respectively, not liability.
In essence Louisiana Indemnity's contention is that if Becky's exclusion is not enforceable, Norma's policy should be reformed to provide liability coverage only to the extent mandated by the Louisiana Compulsory Motor Vehicle Liability Security Law. Accordingly, its argument continues that since uninsured motorist and collision coverage are not required by this law, Norma's policy cannot be reformed, as did the trial court, to extend these coverages under the facts presented.
From the fact that the jurisprudence has long been settled in this area of litigation, we find that Louisiana Indemnity was well aware of the unenforceability of Becky's exclusion from the policy. Because of this we conclude that when an exclusion is invalidated by the compulsory insurance law, coverage should not be limited to the minimum extent required by law. Instead, coverage should be made available to the permissive user to the full policy limits, just as if the insured had been driving the vehicle at the time of the accident. In reaching this determination we choose not to follow Arnaud v. Commercial Union Ins. Co., 594 So.2d 992 (La.App. 3 Cir.1992), writ denied, 604 So.2d 994 (La.1992), finding that strict compliance with that decision fails to take into account the uninsured motorist and collision coverage specifically selected by Becky's mother. See, Pitcher, supra; Cinquemano v. Underwood, 611 So.2d 838 (La.App. 4 Cir.1992), writ denied, 617 So.2d 909 (La.1992). Accordingly, we find no error in the trial court grant of summary judgment in favor of Becky and Norma Threats.

RETROACTIVITY OF AMENDMENTS TO LSA-R.S. 32:900(L)
Louisiana Indemnity next contends that the trial court erred by failing to retroactively apply the 1992 amendment to LSA-R.S. 32:900(L) to this insurance policy which was written in 1989.
There is no doubt that the 1992 amendment to LSA-R.S. 32:900 now permit an insurer and its insured to execute a written agreement to exclude from coverage any named person who is a resident of the same household as the named insured. However, for reasons which follow, we find no error in the trial court's determination that this amendment was inapplicable to the present case.
In determining whether laws may be applied retroactively, LSA-C.C. Art. 6 provides:
"In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretive laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary."
Elaborating on LSA-C.C. Art. 6 in Cole v. Celotex Corp., 599 So.2d 1058, 1063 (La.1992), the Louisiana Supreme Court explained:
"LSA-C.C. Art. 6 requires that we engage in a two-fold inquiry. First, we must ascertain whether in the enactment the legislature expressed its intent regarding retrospective or prospective application. If the legislature did so, our inquiry is at an end. If the legislature did not, we must classify the enactment as substantive, procedural or interpretive."
Furthermore, even where the legislature expressed its intent to give a substantive law retroactive effect, the law may not be applied retroactively if it would impair contractual obligations or disturb vested rights. Burmaster v. Gravity Drainage Dist. No. 2, 366 So.2d 1381 (La.1978).
In Act 979 of 1992, we do not find that the legislature expressed its intent regarding retroactive or prospective application of its amendment to LSA-R.S. 32:900(L). Accordingly, our next inquiry is whether the enactment is substantive, procedural, or interpretive.
Substantive laws establish new rules, rights, and duties or change existing ones. St. Paul Fire & Marine Ins. Co. v. Smith, 609 So.2d 809 (La.1992). Procedural laws prescribe a method for enforcing a substantive right and relate to the form of the proceeding or the operation of the laws. Graham v. Sequoya Corp., 478 So.2d 1223 (La.1985). Interpretive laws merely establish the meaning the interpreted statute had *281 from the time of its enactment. St. Paul Fire & Marine, supra at 817.
Applying this analysis to the present case, it is clear that the amendment to LSA-R.S. 32:900(L) created a different substantive right under the contract of insurance which was theretofore unavailable. As such, this amendment created a specific, limited substantive exception to the requirement of omnibus coverage for permissive users. Accordingly, we find that the trial court properly refused to apply this substantive amendment retroactively to the present case.

FINAL JUDGMENT
Louisiana Indemnity next contends that it was improper for the trial court to hear oral argument after handing down written reasons for judgment and then to render written judgment which did not comply with the substance of the written reasons originally stated for judgment. We disagree.
After trial on the merits and after Judge Bertrand, the trial judge before whom the case was tried, filed written reasons for judgment, LIGA motioned the court for a rehearing, contending that the written reasons for judgment did not take into consideration LSA-R.S. 22:1379 and 1386.
When LIGA's motion for rehearing was considered, Judge Bertrand had retired from the bench and an ad hoc judge, Judge Lauve, heard the argument on LIGA's motion for rehearing. Finding LIGA's presentation of the statutory law pertinent and controlling of the issues presented, Judge Lauve rendered a written judgment which conformed to LIGA's argument.
Louisiana Indemnity asserts that the ad hoc judge improperly amended a substantive element of the judgment in contravention of LSA-C.C.P. Art. 1951. We point out that the procedural articles and the jurisprudence have long differentiated between written reasons for judgment and the formal judgment. Clearly, under this well established principle, it is evident that the written reasons for judgment did not constitute a final judgment. Accordingly, it is evident that the judgment before us was the first and only judgment signed and thus could not have constituted an amended substantive judgment. Therefore there is no merit to Louisiana Indemnity's contention.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Louisiana Indemnity.
AFFIRMED.